1

2

3 **UNITED STATES DISTRICT COURT**

4 **DISTRICT OF NEVADA**

5 **\* \* \***

6 PLATINUM AIR CHARTERS, LLC,

7

8                     Plaintiff,                              2:05-cv-01451-RCJ-LRL

9 v.                                                          **ORDER**

10 AVIATION VENTURES, INC., d/b/a
VISION AIR,

11

12                     Defendant,

13 and RELATED MATTERS.

14            Before the court is Vision Emergency Motion for Protective Order (#38), Platinum's Opposition

15 (#41), Vision's Reply (#44), Platinum's Motion for Leave to File Surreply (#47), and Vision's

16 Opposition to Platinum's Motion for Leave to File Surreply (#49).

17            Platinum commenced this action on a Complaint for unspecified damages for breach of an Air

18 Charter Services Agreement ("Agreement") it entered into with Vision.  Vision is counterclaiming for

19 breach of contract and tortious breach of the implied covenant of good faith and fair dealing resulting

20 from Platinum's termination of the Agreement.  An Amended Complaint (#45) was filed on November

21 1, 2006.

22            Vision filed the instant motion after it received notice of the depositions of five entities[1] with

23

24            [1]Four of the five noticed depositions are companies engaged in the sale of Grand Canyon air and ground tours
through independent brokers and agents in the Far East.  (Mot. (#38) at 3).  These companies are H.I.S Tours USA, Inc.

25 ("HIS"), Japan International Tours, Inc. ("Japan Int'l"), Beikoku Travel Network, Inc.("Beikoku"), and JTB
International, Inc. (JTB).  The fifth noticed deposition is that of Shane Nyberg ("Nyberg").  Shane Nyberg is an

26 employee of Look Tours that sold Vision's grand canyon tours directly to the public over the internet.  (Mot. (#38) at 5).

which it does business.  Vision requests that the court issue a protective order pursuant to Fed. R. Civ. P. 26(c)(1), (7), or, in the alternative, to quash the subpoenas under Fed. R. Civ. P. 45(c)(3)(A)(iii), (B)(iii).

For the following reasons Vision urges the court to issue a protective order preventing the depositions.  First, it argues that confidential pricing information is a commercial trade secret protected under Nevada law.  Vision argues, moreover, that there is an inherent need for complete confidentiality with respect to pricing the wholesale costs of air and land tours.  It claims that "the need for confidentiality of net rates arises not only between Vision and these travel agencies, but also between the travel agencies themselves." (Mot. (#38) at 4).  Additionally, Vision argues that if these prices were not kept secret, it would have a ruinous affect on their profits.  Next, even if the pricing information is not a trade secret, the pricing information and the passenger identities are not relevant to this action.  Vision's final argument is that under statute and FAA regulations Vision is obligated to protect passenger information, and that the broad scope of the requests would be unduly burdensome to the travel agencies.

Platinum responds that the information is relevant to show whether Vision was an "on demand carrier" as required by the Agreement; whether passengers were scheduled for air tours between October 21 and 31, 2005; and to determine Vision's alleged damages.  Platinum also argues that pricing and passenger information are not trade secrets or protected by statute or regulation.  Even if they are, however, Platinum asserts that any trade secret status, or prohibition by statute or regulation, has been waived.  Alternatively, Platinum argues that if the pricing is a trade secret the information should be disclosed subject to a protective order.

# I. PROCEDURAL MATTERS

## A. Standing

Vision, a party to the litigation, is objecting on behalf of subpoenaed nonparties, claiming that its own trade secrets will be disclosed by the nonparties' compliance.  Vision claims it has standing to object to the subpoenas, which Platinum argues does not exist, because the subpoenas affect a personal

right or privilege with respect to the materials sought.

A party has standing to challenge a subpoena issued to a non-party when it alleges a personal right or privilege with respect to, or has possession of, the materials subpoenaed. *See Jez v. Dow Chemical Co., Inc.*, 402 F. Supp. 2d 783, 784–85 (S.D. Tex. 2005). If, in fact, the documents in the possession of the five businesses do contain Vision's confidential trade secret information, they would be entitled to protection against unauthorized disclosure of such information to third parties, and particularly to competitors. *See Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y. 1967) (citations omitted). The determination of the extent of the protection afforded, however, is completely within the court's discretion. *See E.I. Du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 103 (1917).

**1. Trade Secret**

Nevada's Uniform Trade Secrets Act is codified at Nev. Rev. Stat. §§ 600A.010–600A.100. Nev. Rev. Stat. § 600A.030(5) defines a trade secret as:

> information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The Nevada Supreme Court in *Franz v. Johnson* concluded that "the determination of whether corporate information, such as customer and pricing information, is a trade secret is a question for the finder of fact." 116 Nev. 455, 466–67 (2000) (citation omitted). The court set out the following relevant factors to be considered:

> (1) the extent to which the information is known outside of the business and the ease or difficulty with which the acquired information could be properly acquired by others;
> (2) whether the information was confidential or secret; and
> (3) the extent and the manner in which the employer guarded the secrecy

3

1  of the information . . . .

2  *Id.*

3  Vision's contention that the pricing information is a commercial trade secret is supported in the

4  moving papers only by conclusory statements.  The record is too meager at this stage to freeze the

5  documents or bar their disclosure completely.  Further, Vision does not have an absolute right to refuse

6  to divulge information claimed to be of a trade secret nature; the extent to which disclosure will be

7  compelled is a matter resting within the court's discretion.  *E.I. Du Pont de Nemours Powder Co.*, 244

8  U.S. at 103 ("It will be understood that if, in the opinion of the trial judge, it is or should become

9  necessary to reveal the secrets to others, it will rest in the judge's discretion to determine whether, to

10  whom, and under what precautions, the revelation should be made."); *Bittaker v. Woodford*, 331 F.3d

11  715, 726 (9th Cir. 2003) ("Courts could not function effectively in cases involving sensitive information

12  . . . if they lacked the power to limit the use parties could make of sensitive information . . . .")

13  Because the question of whether the pricing information is a trade secret remains open and the

14  court is asserting jurisdiction on other grounds (*see* discussion *infra*), the court need not reach the

15  question of whether Vision has a personal right or privilege in the contested information.

16  **B.  Jurisdiction**

17  Platinum argues that this court should abstain from ruling on Vision's motion for a protective

18  order or to quash the subpoenas issued to the California companies,[2] because only the court issuing a

19  subpoena has jurisdiction over all of the persons, including those served with the subpoena.  Platinum's

20  position is correct, up to a point.

21  Rule 45(c) does provide that subpoenas should be enforced by the district court which issued

22  them, but this rule "does not alter the broader concept that the district court in which an action is

23  pending has the right and responsibility to control the broad outline of discovery."  *Static Control*

24  *Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, (M.D.N.C., 2001) (citing *Fincher v. Keller*

---

[2]HIS, Japan Int'l, and Beikoku.

4

*Industries, Inc.*, 129 F.R.D. 123, 125 (M.D.N.C. 1990)).   General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued.   The court, therefore, concludes that it can and should address the issues raised by Vision's request for a protective order, as these issues extend well beyond the matter of a specific subpoena. *Static Control*, 201 F.R.D. at 434 n.5.

### 1. Specific Objections to Subpoena

Beikoku served timely objections to the subpoenas pursuant to 45(c)(2)(B).   (*See* Reply (#44) Exs. A).   The court will not now address whether Beikoku need respond to the subpoena.   That inquiry shall be addressed if, and when, Platinum moves for an order to compel production from the appropriate court.

## II. Protective Order

Vision requests that the court issue a protective order pursuant to Fed. R. Civ. P. 26(c)(1) and (7).   The subpoenas duces tecum directed the entities to bring[3]:

> 1. All agreements between you and Vision Air relating to flights from North Las Vegas Airport to Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.
>
> 2. All documents identifying the number and/or identity of passengers scheduled to fly on flights provided and/or arranged by Vision Air between North Las Vegas Airport and Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.
>
> 3. All correspondence, email, notes, memoranda and other written or recorded statements, which reflect communication between you and Aviation Ventures Inc. d/b/a Vision Air or Vision Holidays with respect to flights from North Las Vegas Airport and Grand Canyon Airport, and

---

[3] Not all of the items listed apply to every subpoenaed nonparty.

returning, between May 17, 2005 and October 31, 2005.

    4.   All documents describing or setting forth your job description, including but not limited to any role you had working with Aviation Ventures Inc. d/b/a Vision Air or Vision Holidays with respect to flights from North Las Vegas Airport to Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.

    5.   All schedules or load manifests you sent Aviation Ventures d/b/a Vision Air or Vision Holidays with respect to flights from North Las Vegas Airport to Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.

(Mot. (#38) Exs. A, B).

    The matters on which examination is requested relate to each of the areas of documents requested.

    The law confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 38 (1984)). "[T]he party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Id.* at 1210–11 (citations omitted). The scope of discovery is governed by Rule 26, which allows "discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending litigation." Fed. R. Civ. P. 26(b)(1). Relevancy is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case. *See Oppenhemier Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted); Fed. R. Civ. P. 26(b)(1).

**1.  All agreements between the travel agencies and Vision Air relating to flights from North Las Vegas Airport to Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.**

Vision objects to such agreements being produced because they contain the prices it charges

each agency for air and ground tours.  Vision argues that the pricing of air tours is a critical component of success or failure in the tour industry; thus, complete confidentiality is required.  Vision insists that pricing information must be kept secret from its competitors in the Las Vegas area, and between the travel agencies themselves.  Any one travel agency, Vision argues, should not know what any other agency is paying because the net rates paid by each agency vary.

In determining whether to grant a protective order, the court must balance the competing interests to be served by allowing discovery to proceed against the harm which may result from disclosure.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).  In this case, the court balances Platinum's need for the information with the potential harm to Vision from disclosure of their net pricing.  Vision argues that because it has the burden of proving damages, Platinum does not need information to disprove such claims.  The court realizes that disclosure of the information sought by Platinum to competing tour companies and travel agencies may cause harm to Vision.  Vision, however, cannot allege it suffered lost profits and then refuse to provide Platinum with the information necessary to refute those claims.

While the records of pricing information have not been shown to be trade secrets, the court finds that the documents detailing such data are entitled to some protection.  The court shall require the parties to fashion and file an appropriate protective order to protect the pricing information of Vision.

**2. All documents identifying the number and/or identity of passengers scheduled to fly on flights provided and/or arranged by Vision Air between North Las Vegas Airport and Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005**.

Platinum claims that the number and identity of passengers are relevant to confirm that passengers were scheduled for Vision air tours between October 21 and October 31, 2005.  Platinum argues this information is necessary to defend against Vision's lost profit claims.  Further, Platinum requests this information to determine whether passengers were scheduled for Vision air tours more than 24 hours after Vision received notice of their reservation.  Platinum contends that if it was to prove this fact it could show that Vision breached their Agreement.  Whether this conclusion has merit is an

issue for the trier of fact.

Platinum is entitled to information that would tend to prove or disprove its claims. *See* Fed. R. Evid. 401. However, the names of passengers are not a necessary component of the factual bases on which Platinum seeks to prove its claims.[4] Rather, the number of passengers booked from October 21 through October 31, 2005, and whether, and what number, of passengers were booked and took the air tour 24 hours after booking, during the terms of the Agreement, are sufficient to make such determinations.

> **3. All correspondence, email, notes, memoranda and other written or recorded statements, which reflect communication between the travel agencies and Aviation Ventures Inc. d/b/a Vision Air or Vision Holidays with respect to flights from North Las Vegas Airport and Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.**

Vision argues that this category of documents is extremely broad. The court agrees. This information is also not relevant to the claims for which Platinum seeks factual evidence. (*See* Opp'n (#41) at 5).

> **4. All documents describing or setting forth Shane Nyberg's job description, including but not limited to any role he had working with Aviation Ventures Inc. d/b/a Vision Air or Vision Holidays with respect to flights from North Las Vegas Airport to Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.**

> **5. All schedules or load manifests Shane Nyberg sent Aviation Ventures d/b/a Vision Air or Vision Holidays with respect to flights from North Las Vegas Airport to Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005.**

Categories four and five are directed to Shane Nyberg. Shane Nyberg is an employee of Look Tours. Look Tours acts as a tour broker by selling Vision's air and ground tours products on the internet. Vision did not address these requests specifically, but it claims that Look Tours is analogous to the travel agencies in that any pricing and customer information should be kept secret.

---

[4] Because the court finds that the names of the passengers are not relevant to the inquiry it does not address the applicability of the Federal Aviation Administration regulations, Privacy Act of 1974, or 14 C.F.R. § 243.9. For the same reason, it does not address Platinum's claim that Vision's alleged privilege was waived.

The analysis of what information is discoverable here mirrors that of the travel agencies. Thus, if any passenger names or identification is included in the documentation it will be redacted before producing such documents to Platinum. The secrecy of the remainder of the information will be secured by a protective order.

**III.  Nevada Subpoenas**

Subpoenas were issued by this court and served on JTB and Shane Nyberg. JTB timely objected to the subpoena. (*See* Reply (#44) Ex. B). JTB's objections largely follow the arguments of Vision in requesting the protective order. The one exception is the objection that document request areas two and three are unduly burdensome. The court's findings regarding these areas alleviate any burden claimed by JTB. The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden. *See United States v. Nysco Labs. Inc.*, 26 F.R.D. 159, 161–62 (E.D.N.Y. 1960). JTB, therefore, shall be required to produce discovery to the extent outlined above, and appear for deposition at a mutually agreed upon time.

Accordingly, and for good cause shown,

IT IS ORDERED that Vision's Emergency Motion for Protective Order is GRANTED to the extent that passenger names or identification; and all correspondence, email, notes, memoranda and other written or recorded statements which reflect communication between all subpoenaed nonparties and Vision Air or Vision Holidays with respect to flights from North Las Vegas Airport and Grand Canyon Airport, and returning, between May 17, 2005 and October 31, 2005 shall not be had.

IT IS FURTHER ORDERED that the parties will submit a proposed confidentiality order by January 19, 2007. In the event the parties are unable to stipulate to a proposed confidentiality order, the parties shall, not later than January 26, 2007, each file a proposed protective order regarding confidentiality, from which the court will fashion the governing confidentiality order.

. . .

. . .

. . .

9

IT IS FURTHER ORDERED that JTB International, Inc. and Shane Nyberg shall produce documents and appear for deposition at mutually agreed upon times after the confidentiality order has been approved, to the extent outlined *supra*.

IT IS FURTHER ORDERED that Platinum's Motion for Leave to File Surreply (#47) is DENIED.

DATED this 10th day of January, 2007.

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**